# SUPREME COURT.

DEODATUS ROGERS and STEPHEN MARSHALL agt. JOSHUA G. BEARD, GEORGE DARLING, and FLORENCE McCARTY.

Where the defendants claimed to recoup *damages* for the detention of a vessel, which had been attached, on a lien for repairs claimed by the plaintiffs; and on the trial, the defendants were allowed to prove that the vessel would earn $40 per day *during the season of navigation,* which rate was allowed by the referee, *held,* error.

The true rule of damages should have been proved by showing what was the value of the services of the vessel per day at *that particular time:* that is, the damages should have been shown to be *proximate,* and not remote. (*See Griffin* agt. *Colver,* 16 *N. Y. R.,* 495.)

Where, on exceptions, the court cannot clearly see that *injustice has not been done* by the application of an improper rule of damages, they must order a *new trial.*

Where, on appeal, the findings of a *referee* of *fact* and *law* are not made and inserted in the case, according to the rule and the Code, and especially where, in consequence, an attempt to review any decision the general term might make, would be attended with much embarrassment, the general term will refuse to review it.

What findings of *fact* and of *law* in a given case, and how they should be stated by a referee in his report in an action tried before him.

*Seventh District, Monroe General Term, September,* 1860.

THIS was an action upon an attachment bond, given by the defendants on releasing a vessel upon which the plaintiffs claimed a lien for repairs. The complaint was as follows:

The plaintiffs, complaining, state: That in the month of November, in the year 1856, at the town of Greece, in the county of Monroe, at the special instance and request of the owner and master of the schooner Isabella, a vessel used in the navigation of lake Ontario, the plaintiffs furnished materials, and performed work and labor in repairing said schooner, to the amount and value of six hundred dollars; and such claim, by virtue of the statute in that case made and provided, was then a subsisting lien upon such vessel.

The plaintiffs further say, that on or about the 15th day of December, 1856, the plaintiffs made application, in writing,

Rogers agt. Beard.

to Hon. Theron R. Strong, a justice of the supreme court, for a warrant to enforce the lien of such debt; and then and there established the same, and presented the affidavits and proofs thereof, as required by the statute; and thereupon said justice duly issued his warrant to the sheriff of Monroe county, commanding him to attach, seize and safely keep said vessel, her tackle, apparel, and furniture, to answer all such liens as should be established against her, according to law; and thereupon, on the day and year last aforesaid, such sheriff, by virtue of sad warrant, attached, seized, and took into his possession the said vessel.

The plaintiffs further say, that on or about the 28th day of January, 1857, for the purpose of procuring the release of said vessel, the defendants, in pursuance of the statute, executed their bond, under their hands and seals, by which they acknowledged themselves held, and firmly bound unto the plaintiffs, in the sum of one thousand two hundred dollars, to be paid to the plaintiffs, their executors or administrators, and for which payment said defendants bound themselves, their heirs, executors and administrators, jointly and severally.

The plaintiffs further say, that said bond, after reciting the facts in regard to the seizing of said vessel, as above stated, contained a condition, that if the defendants should pay the amount of all such claims and demands, as should have been exhibited, which should be established to have been subsisting liens upon such schooner or vessel, at the time of the exhibiting the same, respectively, then such obligation to be void, else of force, as by said bond, ready to be produced, will more fully appear.

That such bond was delivered to said justice, and he thereupon granted his order discharging said warrant, according to the statute in such case made and provided.

The plaintiffs further say that their claim and demand as above stated for materials and labor in repairing such vessel, was a subsisting lien upon said vessel at the time of

the exhibition thereof as herein before stated, and the same has not been paid, nor any part thereof; wherefore the condition of such bond has been broken, and the plaintiffs demand judgment against said defendants for the sum of one thousand two hundred dollars, together with costs and disbursements.

The answer of the defendants was as follows:

1st. The defendants, for answer to the complaint of the plaintiffs in this action, controvert each and every allegation therein contained, and deny the same.

2d. For a second and further answer and defence in said action, the defendants say that the materials in said complaint alleged to have been furnished, and the work and labor performed in repairing the schooner in said complaint named, were so furnished and performed under and in pursuance of a special contract or agreement, and not otherwise, theretofore, to wit: on or about the thirteenth day of November, 1856, at the town of Greece, in the county of Monroe, made and entered into by and between Joshua G. Beard, the owner of said schooner Isabella, and defendant above named, of the one part, and the said plaintiffs of the other part, whereby the said plaintiffs undertook and agreed to and with the said Joshua G. Beard, to furnish all the materials necessary to be used in the repairs of the said schooner, and do and perform all the work and labor in making such repairs, for the price and consideration of three hundred dollars, to be paid on the completion thereof, and that the said materials should be furnished, and the work and labor done, performed, and the said repairs fully completed and finished, within one week from the time of making said agreement.

And the defendants say and aver, and the said Joshua G. Beard, for himself, says, that relying upon the said undertaking and agreement, so made with the said plaintiffs, and that the said repairs should and would be fully made and completed at and within the time aforesaid, and in consid-

eration thereof, he, said Beard, undertook and agreed on the completion thereof as aforesaid, to pay the said plaintiffs therefor, and for the materials aforesaid, the said price and sum of three hundred dollars; and the said defendants aver that the said Joshua G. Beard, in all things on his part fully performed the said agreement, but that the said plaintiffs did not and would not perform the same on their part, but made default in this : they did not furnish said materials, or make or do said repairs, or finish and complete the same within or at the time in said agreement specified, or at any time prior to the twelfth day of December, 1856, that by reason of such failure on the part of said plaintiffs, the said defendant, Joshua G. Beard, suffered and sustained great loss and damage in the loss of the use and earnings of said schooner, and the loss and depreciation in the value and price of her cargo and property to be transported by said schooner, and in the wages of servants, and in the detention of said schooner, and in expenses and damages by reason of such detention, to wit : two thousand dollars; whereby and by reason of the premises, the defendants claim, say and insist, that no sum whatever was or is due from them, or either of them, to the said plaintiffs for materials, work or labor, or otherwise ; or that the said plaintiffs, at the time in said complaint stated, or at any time, had a subsisting or any lien upon said vessel or schooner, on account of, or for any materials, work or labor furnished or done in repairing said vessel or schooner, or otherwise; and that the plaintiffs' complaint should be dismissed, with costs.

The reply put in issue the allegations of the second defence in the answer. A copy of the attachment bond was then given by the plaintiffs, dated January 28, 1857, and signed by Joshua G. Beard, George Darling, and Florence McCarty.

The action was brought on for (second) trial before S. Mathews, Esq., sole referee, on the 29th day of December,

1859. It was conceded that the vessel mentioned in the bond, and upon which the action was brought, was seized under and by virtue of an attachment given in favor of the plaintiffs under the provisions of the Revised Statutes. That the bond was given to procure the return of said vessel. The execution of the bond admitted, and the same offered in evidence. A lengthy examination of numerous witnesses took place, in reference to the verbal contract made between the plaintiffs and the defendant, J. G. Beard, the owner of the vessel, and the work performed under it. A judgment for the plaintiffs, entered on the report of the referee on the first trial, was reversed, and a new trial ordered, the general term delivering the following opinion:

By the court, E. DARWIN SMITH, Justice. The referee finds that if the vessel in this case had been completed, including the extra work, within two weeks, the defendant, Beard, would have had the use of said vessel eight days in navigating lake Ontario that fall. The defendant was also allowed to prove that the vessel would earn $40 per day, and in his report the referee allows the defendant damages $320, at this rate of $40 per day, for eight days. This was error, as we have held in one case this term of *Richmond* agt. *Curtis*, and as is also held in *Griffin* agt. *Colver*, (16 *N. Y. Rep.*, 495.) On the trial the question was asked as follows: " What would vessels earn a day during the season of navigation ?" ˙ This was objected to by plaintiffs' counsel as incompetent and irrelevant. The objection was overruled, and plaintiffs' counsel excepted. I do not see why this exception is not well taken. The question did not present the true rule of damages. It is quite apparent, I think, that in the application of this rule of damages, injustice has been done—at least we cannot clearly see that it has not—and this, I suppose, upon exceptions, is sufficient to make it our duty to grant a new trial. The true question was what was the use of the vessel worth at that

particular time or season of the year. It was about the close of navigation upon the lake, and it was hardly fair to take the rule of damages from what vessels would earn during the season of navigation. At least that might not be the fair rule. For these errors I think the judgment should be reversed, and a new trial granted, with costs to abide the event.

On the second trial the referee stated his conclusions of fact and law as follows:

After the best consideration I have been able to give this case, I have arrived at the following conclusion:

1st. The contract of the plaintiffs for repairing the schooner Isabella for $300, embraced all the repairs which, after the examination made by Rogers and the master of the vessel on the 15th of November, were determined by them to be necessary. I conclude from the evidence, that all the work done by the plaintiffs was included in their contract, except the blacksmith's bill of $32.45, conceded by the defendants.

2d. [I cannot find from the evidence that the work was to be completed within a week from the 13th of November. No definite time was fixed for completing the work. The law fixes the time: the plaintiffs were required to complete it within a reasonable time.] There is some evidence in the case, from which I might find that the work was not finished within a reasonable time; but in the view which I took of the remaining questions, it may not be necessary to pass upon it at all.

To this portion of the finding in brackets, the defendants duly excepted.

3d. The testimony on the question of damages, is substantially the same as that given on the former trial. [The testimony on the part of the defendants, is based wholly upon the notion that they are entitled to damages for the probable loss of earnings or profits which might arise from the use of the vessel in the fall of 1856 by the defendants,

with a competent crew, in the transportation of wheat, without regard to the risks and accidents attending the navigation of the lake at that season of the year. As I understand the opinion of the court in granting a new trial in the case, that is not the true rule of damages, and I therefore reject all the evidence given by the defendants upon that trial, which was objected to by the plaintiffs and received by me subject to their objection. I cannot see that the other items of damages claimed by the defendants, necessarily or naturally resulted from the delay in his completion of the work.

4th. My conclusion upon the whole case is, that the plaintiffs had, at the time of the seizure of the vessel, a lien upon her for the sum of $332.45; and they are entitled to judgment for that sum, with interest from the 14th of December, 1856.]

S. MATHEWS.

To this portion of the finding, and to each and every part thereof, the defendants duly excepted.

The report of the referee upon the case was stated as follows:

*To the Supreme Court:* I, the undersigned, sole referee in this action, respectfully report, that between the 15th day of November and the 12th of December, 1856, the plaintiffs, at the request of Joshua G. Beard, the owner, made repairs upon the schooner Isabella, (a vessel used in the navigation of lake Ontario,) at Charlotte, in the county of Monroe, to the value of three hundred and thirty-two dollars forty-five cents, three hundred dollars of which sum was the agreed price between said Beard and the plaintiffs for making the repairs agreed to be made, and thirty-two dollars forty-five cents thereof for iron work furnished by the plaintiffs upon said vessel at the request of said Beard; that the repairs were completed on the 12th day of December, 1856. On the 15th December, 1856, the plaintiffs took proceedings under the provisions of part 3, chapter 8, title 8, of the

Revised Statutes, to enforce their lien for repairs, and a warrant of attachment was issued by Hon. T. R. STRONG, a justice of the supreme court, for the seizure of said vessel, as alleged in the complaint, and said vessel was so seized by the sheriff of Monroe county, December 15, 1856, and the same was kept by him until January 28, 1857, when the bond described in the complaint was executed by the defendants to procure her release, and she was thereupon released, and the bond delivered to the plaintiffs.

As matter of law, I decide that, at the time of the commencement of said proceedings, and exhibiting said demands, [and at the time of the execution of said bond, the plaintiffs had a subsisting lien on said vessel for the sum of three hundred and thirty-two dollars forty-five cents, and interest on the same from December 12, 1856, and that the plaintiffs are entitled to judgment against the defendants for the penalty of said bond, with execution, for the sum of four hundred and five dollars and forty-five cents, besides costs.]

February 2d, 1860.                        S. MATHEWS.

To this part of the report, and to each and every part thereof, the defendants did duly except.

And the defendants duly filed and served the following exceptions:

Take notice, that the defendants except to the report of the referee:

1. Wherein the referee finds that the completion of the repairs 12th December, 1856, was in compliance with the agreement made between Rogers and Beard.

2. Wherein he finds that at the time of the commencement of the proceedings, and the execution of the bond, the plaintiffs had a subsisting lien on said vessel for the sum of $332.45, and interest on the same from December 12, 1856, and that the plaintiffs are entitled to judgment against the defendants for the penalty of said bond, with execution, for the sum of $405.45, besides costs.

3. Wherein he finds that no definite time was fixed for completing the repairs and work on the vessel.

4. And wherein he finds that the owner of the vessel was not entitled to any compensation or damage for the detention of said vessel, or for the failure on the part of the plaintiffs to complete such repairs within the time specified, and that no damages were recoverable or allowable.

O. H. PALMER, *for defendants and appellants,*

argued the following points :

It will not be disputed on the part of the plaintiffs that the vessel was repaired under and in pursuance of a special contract, made between Rogers and Beard, November 15, 1856.

The referee has so found the fact. (*Fol.* 125, 131.)

I. Unless the plaintiffs have shown performance under the contract, *strictly according to its terms,* no lien under the statute attached, and it cannot be held that the plaintiffs, at the time of the seizure, had a valid and subsisting claim, which was a *lien* on the vessel. (2 *R. S.,* 587, 588, 589, 3*d ed.*)

The statute giving the lien is in derogation of the common law, and cannot be extended or enlarged by construction. (*Veltman* agt. *Thompson,* 3 *Com.,* 438.)

1. Unless there was such a claim, *which was a lien on the vessel at the time of the seizure,* this proceeding cannot be maintained.

2. The referee has found that the contract was that the vessel was to be repaired for a specific price, by the job, and to be completed *within a reasonable time,* and that he should be justified from the proof, in finding it was not completed within a reasonable time. (*Fol.* 126.) We are justified, therefore, in saying, that by the finding of the referee, there was a special contract, and a failure to perform on the part of the plaintiffs, and that, therefore the statute lien did not attach.

3. But the proof shows that the job was to be completed by a specific time, viz : within one week from November 15, 1856. (*Fols.* 28, 46, 48, 53, 60, 61.)

4. Rogers himself admits (*fol.* 28,) that, "weather permitting," the job was to be completed *in a week*. He fails to show the weather did not permit. If, therefore, the contract was, as admitted by Rogers, it was not performed, and the delay is not excused.

II. But, if the amount of the contract price, $332.45, was a lien upon the vessel, then we submit the claim is defeated by reason of the damage sustained by Beard, by the failure of Rogers to perform the contract within the time agreed upon, and the unreasonable and inexcusable delay in the work.

1. Expenses, wages, and board of hands and captain, from, say 27th November to 14th December, (allowing time to rig vessel,) as shown in case, $225.00

2. Worth of the use of the vessel, at least 20 days, at $40,  -  -  -  -  -  -  - $800.00

3. But the referee held, substantially, that, conceding the special contract, the breach by the plaintiffs, the plaintiffs' claim for the contract price, was a lien, under the statute, but, that damages could not be allowed, because the testimony is based wholly upon the probable loss of the earnings and profits of a vessel in the fall of the year, on lake Ontario. In other words, the rule *damnum absque injuria*, is applicable to the defendant in this case. (*Fol.* 127, 128.) In this the referee has made a great mistake.

*The testimony is based upon the value of the use of the vessel*, for the time the owner was deprived of her use, by the failure on the part of the plaintiffs.

Does the proof show that the use was worth anything? If so, it was the duty of the referee to have determined how much.

In determining the question, he was to look at the business in which she was employed by the owner, carrying wheat

from Toronto. The state of the supply of produce, and the demand for vessels *there*, the price governing the trade at the point of supply. Whether the use of the vessel at the port of Genesee, or at the plaintiffs' shop, was value-less, or whether she could have been chartered at the mouth of Genesee river is a matter of no consequence, and determines nothing.

She was not engaged in trading at or from that port.

4. The proof shows there was a great demand for vessels at the ports where she was engaged with abundant supply of produce, pressing for transportation—that she could have been let and used, and that the worth of such use was at least $40 a day—that she would have earned for the owner much more.

5. The position, because it was late in the season, the winds stronger, and storms more frequent than in mid-summer, therefore the use of the vessel was worthless, is a strange one, and cannot be maintained.

6. It is one of the settled laws of trade, that increased risks enhance the price of transportation, but do not diminish the value of the use of the means of locomotion, or the profits of the carrier.

7. When we have shown that there was abundance of freight seeking means of transportation, at the ports where this vessel was employed, that she was designed for that trade, and could have been *used or let;* the price of freight, and her capacity, that we were deprived of her use and control by the plaintiff; we have a right to claim remuneration, without regard to this question of risks or peril. (*Griffin* agt. *Colver*, 16 *N. Y. Reports*, 489, 496; *Sedgwick on Damages, ch.* 3, *p.* 73 *to* 79; *Masterton* agt. *The Mayor of Brooklyn*, 7 *Hill*, 61; *Hadley* agt. *Boxendale*, 9 *Exch.*, 341; *Fletcher* agt. *Taylear*, 19 *C. L. R.*, 21; 33 *Eng. L. & E.*, 187; *Davis* agt. *Talcott*, 14 *Barb.*, 611.)

The plaintiffs have no right to say, "your vessel *might have* been wrecked by storms, if we had not kept her from

your control, therefore you should pay us, not we you, for the detention !"

III. The referee erred in excluding the proof offered by defendant. (*Fols.* 85, 88.)

1. The offer of payment of all the plaintiffs were entitled to receive, the refusal by them, and demand of a much larger sum ($600 as per complaint,) was competent upon the question of costs.

2. The offer to prove a wrongful detention was competent, as bearing upon the same question, and tending to prove a fraudulent attempt on the part of the plaintiffs, to extort an amount exceeding that to which they were entitled, and also upon the question of damages.

3. The offer to prove that the vessel could have made a trip after the 28th of November, before close of navigation, was competent upon the question of damages, if under any circumstances, the defendant is entitled to remuneration for any loss and damage by the breach of the contract, by the plaintiff.

But it may be because it was in the fall of the year, when freights were abundant, and vessels in great demand, instead of mid-summer, that the owner was deprived of the use of his vessel, by the defaults and wrongful acts of the plaintiffs, that he is not entitled to any remuneration whatever.

J. C. COCHRANE, *for plaintiffs and respondents,* argued the following points :

I. From the facts found by the referee, his conclusion of law followed of course. (*Fol.* 131.)

II. The evidence does not show that the work was to be completed in any definite time. (*Fols.* 28, 41, 106.) This was a question of fact upon conflicting testimony which the court will not review.

Besides the only damages proved by the defendants were speculative, based upon the probable earnings of the vessel. This court on the former appeal held such evidence inadmissible. (*See* 16 *N. Y. R.,* 489.)

The offer at fol. 84 was properly overruled.

1. There is no such defence set up in the answer.

2. It is not a counter claim, set-off, or defence.

3. The *willingness* of the defendants to pay did not discharge the plaintiffs' lien. They did not offer to show actual payment or tender.

4. The objections in regard to evidence of extra work are not material, as the referee allowed nothing to the plaintiffs for extra work.

By the court, E. DARWIN SMITH, Justice. After a great deal of study and reflection upon this case, with the desire to dispose of it definitively, and after having discussed and considered the merits with considerable care, I have come to the conclusion that the case is not in a proper shape to review. The findings of fact and law are not made and inserted in the case according to the rule and the Code, and an attempt to review any decision we might make would be attended with much embarrassment. The case is one in point of principle of considerable importance, and, I think, should be put in a shape for a careful decision. The referee should have stated distinctly what facts he found, and upon what findings of fact he overruled the defence and disregarded the evidence of the defendants upon their counter claim. He should have found if the work was done upon a special contract; whether the plaintiff fulfilled the contract or broke it, so as to let in the defence of recoupment. If the plaintiff performed the work upon a special contract, and entirely performed his contract, clearly the defendant was properly overruled; but if the work was done, but not within the time fixed in the contract, if a time was specified; then whether it was done within a reasonable time, and what was a reasonable time; and if not done within a reasonable time, but accepted by defendant or time of performance waived; then whether the defendant sustained any damage from such breach of the contract.